# Authority of the Nuclear Regulatory Commission to Collect Annual Charges from Federal Agencies

The Nuclear Regulatory Commission has statutory authority to collect annual charges from federal agencies that hold licenses issued by the NRC.

July 30, 1991

MEMORANDUM OPINION FOR THE GENERAL COUNSEL
NUCLEAR REGULATORY COMMISSION

This memorandum responds to your request for our opinion whether section 6101 of the Omnibus Budget Reconciliation Act of 1990 (OBRA), Pub. L. No. 101-508, 104 Stat. 1388, 1388-298, authorizes the Nuclear Regulatory Commission ("NRC") to collect annual charges from federal agencies that hold NRC licenses. We conclude that section 6101 of OBRA does authorize the NRC to collect such charges.

## I.

Section 6101(a) of OBRA requires that the NRC "shall annually assess and collect such fees and charges as are described in subsections (b) and (c)." *Id.* § 6101(a)(1), 104 Stat. at 1388-298. Subsection (b) sets forth the user fees that the NRC shall collect:

> (b) Fees for Service or Thing of Value. — Pursuant to section 9701 of title 31, United States Code, any person who receives a service or thing of value from the Commission shall pay fees to cover the Commission's costs in providing any such service or thing of value.

*Id.* § 6101(b), 104 Stat. at 1388-298 to 299. Section 9701 of title 31, United States Code, authorizes federal agencies to collect fees for "each service or thing of value provided by [the agency] to a person (except a person on official business of the United States Government)." 31 U.S.C. § 9701(a).

74

It is settled law that federal agencies may not charge other federal agencies user fees under section 9701,[1] *see* 56 Comp. Gen. 275, 277 (1977), and we understand that you are not intending to do so.

Subsection (c) of section 6101 sets forth the annual charges that the NRC is to collect:

> (c) Annual Charges. —
>
> (1) Persons Subject to Charge. — Any licensee of the Commission may be required to pay, in addition to the fees set forth in subsection (b), an annual charge.
> (2) Aggregate Amount of Charges. — The aggregate amount of the annual charge collected from all licensees shall equal an amount that approximates 100 percent of the budget authority of the Commission in the fiscal year in which such charge is collected, less any amount appropriated to the Commission from the Nuclear Waste Fund and the amount of fees collected under subsection (b) in such fiscal year.
> (3) Amount Per Licensee. — The Commission shall establish, by rule, a schedule of charges fairly and equitably allocating the aggregate amount of charges described in paragraph (2) among licensees. To the maximum extent practicable, the charges shall have a reasonable relationship to the cost of providing regulatory services and may be based on the allocation of the Commission's resources among licensees or classes of licensees.

OBRA § 6101(c), 104 Stat. at 1388-299. On April 12, 1991, the NRC published a proposed rule that would establish annual charges pursuant to section 6101(c). *See* 56 Fed. Reg. 14,870 (1991). In the proposed rule, the NRC stated its intention to levy annual charges on *all* licensees, including federal agencies. Ten federal agencies submitted comments opposing the proposed rule on the grounds that the NRC should not impose annual charges on other government agencies.[2] You then requested a legal opinion from this Office on the legality of imposing annual charges on federal agencies.[3] We

---

[1] Of course, other statutes may authorize the collection of user fees from government agencies. *See* 42 U.S.C. § 2201(w) (authorizing the NRC to collect certain fees "from any other Government agency").

[2] The ten agencies are the Departments of Commerce, Energy, Interior, and Veterans Affairs, the Environmental Protection Agency, the National Aeronautics and Space Administration, the Defense Nuclear Agency, and the military Departments of the Army, Navy and Air Force.

[3] You have agreed to be bound by our opinion. *See* Letter for J. Michael Luttig, Assistant Attorney General, Office of Legal Counsel, from William C. Parler, General Counsel, Nuclear Regulatory Commission (May 20, 1991).

requested the views of the ten interested agencies and all but one have responded.[4] Two agencies (Commerce and NASA) expressed the view that the NRC lacked legal authority to impose annual charges on them. Two agencies (EPA and Veterans Affairs) took no position on the legal issue. The Department of Defense, representing five of the interested agencies, concluded that the NRC could impose annual charges. We will refer to these comments as appropriate in this memorandum.

## III.

By its terms, section 6101(c)(1) provides that "*[a]ny licensee of the Commission*" may be required to pay an annual charge. The term "licensee of the Commission" is not defined in section 6101 or elsewhere in OBRA. Nevertheless, the structure of the Atomic Energy Act of 1954 as a whole makes clear that federal agencies are within the class of licensees. The Act requires "any person" to obtain a license from the Commission[5] in order to conduct activities regulated under the Act, 42 U.S.C. § 2131, and the term "person" is defined in section 11(s) of the Act to include "Government agenc[ies] other than the Commission."[6] 42 U.S.C. § 2014(s). Additionally, the Act expressly permits federal agencies authorized to engage in the production, marketing and distribution of electric energy to obtain commercial licenses. *See* 42 U.S.C. § 2020. Thus, because the NRC's regulatory authority clearly extends to the licensing of federal agencies, the term "licensee of the Commission" as used in OBRA refers to all licensees, including government agencies.

The conclusion that section 6101(c)(1) covers all licensees of the Commission is reinforced by the requirements of paragraphs (2) and (3) of that section. Paragraph (2) requires that the aggregate amount of the annual charges collected from "all licensees" approximate 100% of the Commission's budget authority (less the amount of user fees collected and other specified amounts). Paragraph (3) requires that, to the extent practicable, annual charges shall have a "reasonable relationship" to the cost of providing regulatory services to the particular licensee or class of licensees being charged. If the Commission were to exempt federal licensees, other licensees would have to bear costs not directly related to the cost of providing service to them.

[4] We requested that the Defense Nuclear Agency and the military departments consolidate their views into a single submission from the Department of Defense. The Department of Energy informed us that the views of its one interested component, Naval Reactors, would also be incorporated into Defense's submission. The Department of the Interior did not submit any views.

[5] The "Commission" referenced throughout the Atomic Energy Act is the Atomic Energy Commission, which has been abolished. *See* 42 U.S.C. § 2014(f) (defining the "Commission"); 42 U.S.C. § 5814(a) (abolishing the Commission). The functions of the Atomic Energy Commission were transferred to the NRC and the Energy Research and Development Administration in the Department of Energy. *See* 42 U.S.C. § 5841(f), (g); 42 U.S.C. § 5814(b), (c). Because all of the licensing functions are assigned to the NRC, *see* 42 U.S.C. § 5841(f), (g), we will treat all references to the "Commission" in the Atomic Energy Act as references to the NRC.

[6] "Government agency" is broadly defined to include "any executive department, . . . or other establishment in the executive branch of the Government." 42 U.S.C. § 2014(l).

Given the "reasonable relationship" requirement, it would be anomalous to construe the statute so that the Commission is *prohibited* from setting the charges based on a direct, one-to-one relationship to the costs of providing services to a licensee or class of licensees.

In its response to our request for comments, the Department of Commerce argues that the dependent clause in section 6101(c)(1), "in addition to the fees set forth in subsection (b)," limits the universe of licensees subject to the annual charge. Under Commerce's view, Congress intended that the annual charge be levied as an additional element to the user fees authorized under section 6101(b) and 31 U.S.C. § 9701. Thus, only those licensees that are subject to a user fee under 31 U.S.C. § 9701, which excludes government agencies, would be subject to the additional annual charge. We disagree.

Under the ordinary rules of English grammar, the dependent clause "in addition to" cannot be construed as modifying the subject of the sentence, "[a]ny licensee of the Commission." Rather, the clause modifies "to pay . . . an annual charge," making explicit that a licensee paying user fees under section 6101(b) must pay the annual charge in addition to the user fees and may not offset the expense of the user fees against the annual charge. A licensee that pays an annual charge but, for whatever reason, pays no user fees under section 6101(b) can still be described as paying its annual charge "in addition to the fees set forth in subsection (b)." The annual fee is "in addition to" the licensee's user fee liability, which, in the case of federal agencies, happens to be zero.

While the legislative history of OBRA does not expressly address the NRC's authority to assess annual charges against federal agencies, two statements in the legislative history tend to confirm the plain meaning of section 6101(c). First, the Conference Report states that section 6101(c) authorizes the NRC "to assess annual charges against *all* of its licensees." H.R. Conf. Rep. No. 964, 101st Cong., 2d Sess. 961 (1990) (emphasis added). This statement is perhaps even more explicit than the text of section 6101(c)(1). Second, in 1986, when the first provision that authorized the NRC to collect annual charges was enacted into law, *see* the Consolidated Omnibus Budget Reconciliation Act of 1985, Pub. L. No. 99-272, § 7601, 100 Stat. 82, 146 (1986), the conference managers explained that the annual charges were "intended . . . to establish a standard *separate and distinct* from the Commission's existing authority under [31 U.S.C. § 9701]." 132 Cong. Rec. 4887 (1986) (emphasis added) (adoption of statement in Senate); *id.* at 3797 (same in House). *See also* H.R. Conf. Rep. No. 964, at 961 (reaffirming the statement of the managers). This statement militates against construing the annual charges provision consistent with the limitations of 31 U.S.C. § 9701.

## III.

Based on a plain meaning of the text of section 6101(c) of OBRA, we conclude that the NRC can impose annual charges on government agencies.

Both agencies that argued against the legality of the NRC's action, however, argued that such a result should be rejected in the absence of an explicit statement of Congressional intent. Assuming *arguendo* that the plain meaning of the text does not provide such a statement, we have searched to see if any background principle of law or canon of construction would require a clear statement of Congressional intention. We have found none.

The Department of Commerce argues that the NRC proposal violates established fiscal law. Contrary to Commerce's views, agencies that pay the annual charges out of their appropriations will not violate 31 U.S.C. § 1301(a), which requires that appropriated funds be applied only to the objects for which the appropriations were made. An agency that holds an NRC license as part of its mission already expends appropriations in obtaining the license (*e.g.*, the salary of the employee who fills out the application for the license). Paying an annual charge will be just an additional expenditure.

Nor does 31 U.S.C. § 1532, which requires authorization by law to withdraw funds from the appropriation account and credit them to another, preclude annual license charges to federal agencies where those charges are deposited into the general fund of the Treasury. The annual charges collected by the NRC are not credited to an "appropriation account" but are deposited into the general fund of the Treasury pursuant to the miscellaneous receipts statute, 31 U.S.C. § 3302(b). Funds deposited into the general fund of the Treasury are not appropriated funds and are not available for expenditure.

We have also determined that the so-called "anti-augmentation" principle is inapplicable in these circumstances. The "anti-augmentation" principle is "a general rule that an agency may not augment its appropriations from *outside sources* without specific statutory authority." *Principles of Federal Appropriations Law* 5-62 (GAO 1982) (emphasis added). The anti-augmentation principle prohibits augmentation from both government and non-government sources. This principle is not applicable here because section 6101(c) provides express statutory authority for the NRC to recover 100% of its budget authority through user fees and annual charges from outside sources. Moreover, the user fees and annual charges will not augment the NRC's budget because, as previously mentioned, they will be deposited into the general fund of the Treasury.[7]

---

[7] We note in passing that it is not unprecedented for one government agency to charge another for goods or services, or even to impose fines on another, even though the authorizing statutory section does not expressly reference government agencies. *See, e.g., FBI Authority To Charge User Fees For Record Check Services*, 15 Op. O.L.C. 18 (1991) (concluding that Pub. L. No. 101-162, 103 Stat. 988, 998-99 (1989) authorizes the FBI to collect user fees from the State Department to process fingerprint identification records and name checks); Memorandum for J. Paul McGrath, Assistant Attorney General, Civil Division, from Ralph W. Tarr, Deputy Assistant Attorney General, Office of Legal Counsel, Re: *Recovery of Costs of Representing Copyright Royalty Tribunal in Distribution Disputes Pursuant to 17 U.S.C. § 111* (July 1, 1983) (Civil Division may charge the Copyright Royalty Tribunal for the provision of certain legal services); *Constitutionality of Nuclear Regulatory Commission's Imposition of Civil Penalties on the Air Force*, 13 Op. O.L.C. 131 (1989) (concluding that NRC could impose penalties on executive agency).

## CONCLUSION

We conclude for the reasons stated that section 6101(c) of OBRA authorizes the NRC to collect annual charges from other government agencies.

JOHN O. MCGINNIS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*